HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JARED PETER SMIDT and LAURA BETH RIDEOUT-SMIDT, et al., <br><br>                    Plaintiffs, <br><br>        v. <br><br> GEOFF MCPHERSON AND ROSIE MCPHERSON, et al., <br><br>                    Defendants. | Case No. C09-5318RBL <br><br><br> ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT <br> [Dkt. #s 35 and 41] |

THIS MATTER is before the court on Defendant Shakotko and Maher Ingels Shakotko Christensen LLP's Motion for Summary Judgment [Dkt. #35], and Plaintiffs' Motion for Partial Summary Judgment [Dkt. #41].

Plaintiffs Jared Peter Smidt and Laura Beth Rideout-Smidt (together "Smidt") sue on their own behalf and purport to bring derivative actions on behalf of Brothers Northwest Investments, Inc., ("BNI") and Brothers Northwest Homes, LLC ("BNH"). The moving Defendants are Veronica Shakotko and her law firm (together "Shakotko"). Shakotko, an attorney, represented and otherwise provided legal services to BNI and BNH and the entities' individual shareholders and members beginning in 2006. Among other claims at issue in this lawsuit, Smidt alleges that Shakotko had undisclosed and non-waivable conflicts of interest, and that her negligence was a proximate cause of the damage Smidt claims to have suffered when various BNI and BNH real estate ventures failed. Shakotko seeks summary judgment on all of Plaintiffs' claims against her, arguing that the named Plaintiffs do not have standing to

bring derivative claims on behalf of the entities, and that there is no evidence that any professional failing on Shakotko's part caused Smidt or the entities any damage. For his part, Smidt seeks summary judgment on his claim that Shakotko is liable for the (undetermined) damages suffered by him.

The case involves a series of ultimately unsuccessful real estate ventures. The factual context is rich, complex, and disputed. In 2001, Smidt and Bruce Schmidt formed BNI. Each owned 50% of the company, and its initial purpose was to remodel homes. In 2004, they obtained a general contractor's license and began building new homes. In 2005, BNI purchased and sought to develop real property on the Key Peninsula. During that period, BNI built a home for, and then began a sort of loose business relationship with, defendant McPherson. Together, the three also formed another company, South J Street, LLC, which does not appear to be directly at issue.

In 2006, Smidt, Schmidt, and BNI retained Shakotko as general counsel. Another attorney in the Defendant firm (Casey Ingels) had previously done work for McPherson, and during 2006, Shakotko also represented McPherson and his own company, McPherson Development. Shakotko also represented the entities and their owners in various third party litigation, specifically the "Kohler" and "Bastian" lawsuits. Plaintiff testifies that he also thought Shakotko was representing him in the subsequent "Beattie" lawsuit, though he had hired his own attorney at that time.

In this time frame, BNI also hired McPherson to be its Chief Financial Officer, and McPherson and another man, Bliss, discussed becoming owners of BNI. The four decided to form a new entity, BNH, and Smidt claims that Shakotko provided legal advice to all of them regarding the formation of BNH, LLC in June 2006. Smidt, Schmidt, McPherson and Bliss each owned 25% of BNH. Plaintiff claims now that Shakotko had a conflict with respect to her representation of all of the owners of BNH, that she did not disclose the conflict, and did not obtain waivers with respect to it.

According to Plaintiff, BNH was formed in part to purchase and develop an Idaho resort venture known as Sunridge. BNH paid a nonrefundable $400,000 down payment toward the

purchase of the land. The gist of Plaintiff Smidt's claim against Shakotko is that her concurrent representation of the two entities (BNI and BNH) and the four individuals (Smidt, Schmidt, McPherson and Bliss), and her acting in the interest of McPherson over the interests of Smidt and the two entities, resulted in the dilution and or destruction of Smidt's interest in the entities.

By 2007, these ventures were failing or had already failed. Plaintiff claims that in July 2007, Shakotko presented documents to him designed to transfer his interests in BNH to McPherson and Schmidt, and at that time, for the first time, provided him with a written conflict waiver. He claims she did so for the stated purpose of "cleaning up the files for Idaho."

Smidt claims that he did not sign the waiver or the transfer, and that during this time, with Shakotko's assistance (and unbeknownst to him) Schmidt and McPherson were creating other LLCs to solicit investors in projects being undertaken by BNI and or BNH, and diverting those funds to their own personal uses. He claims they transferred corresponding liabilities to BNI, with the ultimate effect of diluting Smidt's interest in BNI and BNH. Ultimately the entities could not follow through on their purchases and lost the properties to foreclosure. According to Smidt, Shakotko was on notice of the other Defendants efforts to dilute his interest through the work of an accountant named Doug Collier. Collier told Shakotko that McPherson's activities were likely fraudulent, and that he was "kiting" funds.

Smidt contends that Shakotko sought to aid Schmidt and McPherson in diluting his interest, and assisted in denying him access to documentation of the various entities' financial accounting information.

Shakotko does not dispute that she represented the various entities, or that all of them failed, losing at least $750,000 plus perhaps another $100,000 in expenses. She contends that she was primarily a scribe, drafting documents reflecting agreements reached by the parties without her input. She also admits that by July 2007, the individuals with ownership interests in the entities had differing goals, and predictably, disputes about money. She contends that BNH had no assets, was insolvent by the end of 2006, and that Smidt's interest in it was "fully compensated" by virtue of the various distributions he had taken prior to the time he agreed to

transfer his interest to Schmidt and McPherson. By 2008, the properties were gone and Shakotko withdrew for lack of payment.

The parties hired accountant Collier in 2005 or 2006 to prepare BNI's tax returns, as well as the returns for BNH and other entities in which the owners had interests. He ultimately could not do so, and now testifies that the books were such a "mess" that returns cannot be prepared for either entity. Shakotko also relies on the expert testimony of accountant Neil Beaton, who is a defense expert who testifies that the records are incomplete, and that the parties' records are so intermingled that a full accounting is not possible. He does claim that BNI and its affiliated entities were insolvent by May 2006, and that BNH was insolvent by the end of 2006.

Beaton claims that because of the state of the records, an accounting is prohibitively expensive, if not impossible, and that therefore, it is not possible to determine if any party owes money to any other. He does purport to claim that Smidt has taken more money out of the two entities than has either Schmidt or McPherson, both as a whole and specifically in 2006 and 2007. Smidt denies the bulk of these allegations.

On these facts (and many more detailed in the parties' respective filings and Declarations in support of them), Plaintiff seeks Summary Judgment on its claim that Shakotko breached her fiduciary duties to him, specifically with respect to conflicts of interest, and that she is liable to him in damages for those breaches.

Defendant Shakotko also seeks Summary Judgment, arguing that Smidt cannot maintain a shareholders derivative action on BNI's behalf, because he has failed to show that the entity was demanded to and failed to assert these claims itself. It also argues that neither Schmidt nor McPherson were shareholders or officers of BNI at the time this suit was filed, that only Smidt was an officer at that time, and that BNI could be but is not a party to this lawsuit.

Shakotko also argues that Smidt cannot bring a derivative suit on BNH's behalf, because his interests are divergent from those of other shareholders. Shakotko claims that Smidt's interests in the litigation are his own, and not the corporation's, as a matter of law.

Order - 4

Specifically, she claims that his interest in BNI is greater than his interest in BNH, and that he seeks compensation primarily for that BNI interest, over the interests of BNH.

Shakotko also argues that the legal malpractice claim against her fails as a matter of law, because she did not represent the Smidt's but rather the entities', and because Smidt cannot, as a matter of law, show that her breaches (if any) proximately caused him any damage.

For the reasons that follow, the Motions for Summary Judgment are DENIED.

### Discussion.

**1. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**2. Disputed issues of material fact preclude Plaintiff's Motion for summary Judgment on liability.**

Plaintiff argues that Shakotko had, and failed to disclose, conflicts of interest with respect to her work for BNI, BNH, and its various owners.  He seeks a ruling as a matter of law that she is liable for damages caused by the breach(es), and that the fees paid to her should be disgorged.

Order - 5

Defendant argues that Smidt has not established that Shakotko represented him, and make hearsay objections to the evidence relied upon by the plaintiff to establish the existence of an attorney client relationship and the various conflicts of interest claimed. She also makes hearsay and foundational objection to the declaration of John Strait[1], plaintiff's expert, regarding these issues.

The resolution of this Motion does not require the court to delve into the legal intricacies of the parties' various arguments. The record before the Court is, like BNI and BNH's accounting, a "rat's nest." It is bursting with disputed issues of fact. Some are fundamental: who did Shakotko represent, and when, and what was she retained to do? When did she know, and when should she have known, that the parties' accounting practices were hopelessly insufficient? And others are more esoteric: would it have been futile for Smidt to demand that BNI institute a suit against its shareholders officers and attorney at the time this suit was commenced? What were her obligations to make that discovery? To provide advice about it? Shakotko reluctantly concedes at least part of this point in her Opposition to the Plaintiff's Motion, arguing that "at a minimum, there is a material issue of fact as to the existence of conflicts of interest when the Plaintiff fails to establish the identity of the client." [Dkt. #46]

Shakotko also seeks summary dismissal of Smidt's disgorgement claim, based on the argument that there was no ethical violation as a matter of law, and that there is no evidence of dishonesty. This too presents numerous issues of fact.

Plaintiff's Motion for Summary Judgment is DENIED.

**3. Numerous issues of fact similarly preclude Shakotko's Motion for Summary Judgment**.

Shakotko's Motion suffers from the same fatal flaws. With or without BNI as a Plaintiff, Smidt has sufficiently alleged conflicts of interest, monetary shenanigans, and damages. Viewed in the light most favorable to him, the evidence establishes each of these claims. It will be up to the fact finder to determine whether Smidt's claim that Shakotko

---

[1] Defendant's Motion to strike this expert Declaration is DENIED.

represented him personally was reasonable, and whether she knew or should have known of the accounting issues, whether she acted in Schmidt and McPherson's interest over the interests of Smidt and the entities', and, if so, what damages, if any, were proximately caused by these actions.  The Defendants' Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

Dated this 21st day of October, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE